IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| **BILLY MASON McCUNE-ESKRIDGE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO. 5:04-0865** |
| | ) | |
| **WEST VIRGINIA DIVISION** | ) | |
| **OF CORRECTIONS,** *et al.* | ) | |
| **Defendants.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

On August 26, 2004,[1] Plaintiff, an inmate at Mount Olive Correctional Complex [MOCC], Mt. Olive, West Virginia, and acting *pro se*, filed his Complaint in this matter claiming entitlement to relief pursuant to 42 U.S.C. § 1983.[2] (Document No. 3.) By Standing Order filed on August 17, 2004, this matter was referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 2.) Pending before the Court is the Defendants' Motion to Dismiss. (Document No. 24.)

**PROCEDURAL HISTORY**

Plaintiff filed his initial Complaint in this matter on August 26, 2004, naming as Defendants, Bob Wise, Governor of West Virginia and the State of West Virginia. (Document No. 3.) Essentially Plaintiff complains that he is being subjected to cruel and unusual punishment in violation of his

---

[1] The undersigned notes that although Plaintiff filed on August 13, 2004, his Application to Proceed *in Forma Pauperis*, he did not file his Complaint until August 26, 2004.

[2] Because Plaintiff is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

rights under the Eighth Amendment of the United States Constitution. (Id., p. 4.) Plaintiff seeks the following relief: $1,000,000.00 in compensatory damages, $500,000.00 in punitive damages, a transfer to a federal halfway house, and criminal charges filed against the Defendants. (Id.) Plaintiff attaches to his Complaint the following Exhibits: (1) Violation Reports (Document No. 3, pp. 7, 10-15.) (2) Hearing Reports (Id., pp. 18, 20, 22, and 24.); (2) A letter dated August 13, 2004, from the West Virginia State Board of Examiners for Licensed Practical Nurses concerning his complaints of two persons at MOCC (Id., p. 8.); (3) A letter dated August 17, 2004, from the FBI concerning Plaintiff's claims of corruption at MOCC (Id., p. 9.); (4) W.Va. DOC Commissioner Jim Rubenstein's responses concerning Plaintiff's appeals of claims not raised in this civil action (Id., pp. 16-17, 19.); (5) A calendar (Id., p. 21.); and (6) Plaintiff's handwritten letter. (Id., p. 23.)

On September 8, 2004, Plaintiff filed his Amended Complaint naming as Defendants, (1) Bob Wise, Governor of West Virginia; (2) Jim Rubenstein, Commissioner, West Virginia Division of Corrections; (3) Tom McBride, Warden, MOCC; and (4) the West Virginia Division of Corrections [W.Va. DOC]. (Document No. 5.) Essentially, Plaintiff complains that on August 25, 2004, Correctional Officers Dixon and Davis, who are not named as Defendants, entered his cell and assaulted him. (Id., pp. 4-5.) He alleges that these officers slammed his head into a window, held his shoulders, damaged four teeth, broke his partial, stabbed him in the back of his neck with an ink pen, and kicked him in the ribs, stomach, and kidneys. (Id.) Consequently, Plaintiff was immediately transferred to Charleston Area Medical Center, Charleston, West Virginia, where it was determined after x-rays and CAT scans, that he suffered a broken clavicle, two broken ribs, contusions, lacerations, and hematomas, on approximately fifty percent of his body. (Id., p. 5.) In support of his Complaint, Plaintiff filed on September 21, 2004, the following Exhibits: (1) Inmate Interview

Request Forms (Document No. 8, pp. 2, 5, 7-8.); (2) Plaintiff's letters to Wheeling Jesuit University and Shepherd University concerning classes (Id., pp. 3-4, 6.); and (3) Commissioner Jim Rubenstein's responses to Plaintiff's appeals with respect to particular claims. (Id., pp. 9-13.)

On October 29, 2004, Plaintiff filed a further Amended Complaint, which reiterates the facts and claims asserted in his first Amended Complaint. (Document No. 14.) By Order entered November 3, 2004, Plaintiff's three Complaints were consolidated into his Amended Complaint. (Document No. 15.)

On November 16, 2004, the Defendants, by counsel, Charles Houdyschell, Jr., Senior Assistant Attorney General, filed their Waiver of Reply and Alternative Motion to Dismiss and Memorandum in Support. (Document Nos. 23-24.) Attached to their Memorandum as Exhibits are: (1) Violation and Hearing Report concerning August 24, 2004, violation of Rule 2.10, Self-Mutilation; (2) Violation and Hearing Reports concerning August 24, 2004, violation of Rule 2.02, Threats; (3) Incident Report dated August 24, 2004; (4) Violation and Hearing Reports concerning August 24, 2004, violation of Rule 1.16, Obstructing an Employee/Visitor; (5) Declaration of Joseph Coy, Correctional Investigator; (6) Declaration of Captain David Ballard, Segregation Commander; (7) Violation and Hearing Reports concerning August 25, 2004, violation of Rule 1.02, Assault and/or Battery; (8) Charleston Work/Study Release Center Duty Officer Report of Correctional Officer II Ricky Snyder, dated August 25, 2004; and (9) W.Va. DOC Policy Directive 335.00, Inmate Grievance Procedures. (Document No. 24, Exhibits 1-9.) In their Memorandum in support of their Motion, the State Defendants contend that Plaintiff's Complaint must be dismissed for the following reasons: (1) The W.Va. DOC is immune from suit under the Eleventh Amendment (Document No. 24, pp. 5-6.), (2) The District Court does not have jurisdiction over the W.Va. DOC

because the agency is not a person under § 1983 (Id., pp. 5-6.), (3) Plaintiff has failed to state a claim against the Defendants to overcome the privilege of qualified immunity (Id., pp. 6-13.), and (4) Plaintiff has failed to exhaust fully his administrative remedies (Id., pp. 11-13.)

The Defendants' Exhibits reveal that on August 24, 2004, at about 12:05 p.m., Plaintiff submitted a note to Correctional Officer James Fleaming stating: "If I have to go back to segregation I will stop taking my insulin and kill myself." (Document No. 24, Exhibit 2.) Also on that same day and time, Plaintiff reported to Shift Commander Lt. Russell Matheny and Correctional Officer II Johnnie Kinkaid that he had ingested 3000 milligrams of Trazadone and unknown amounts of Glucaphage, Neurontin, and Aspirine, in an attempt to kill himself. (Id., Exhibit 1.) Sheryl Snyder and Cyndi Rubenstein were called in from the Mental Health Unit to speak with Plaintiff. (Id.) Consequently, Plaintiff was transported to Montgomery General Hospital for possible drug overdose. (Id., Exhibit 3.) Plaintiff's claim of drug overdose were determined to be false and he was charged with Self-Mutilation in violation of W.Va. DOC Rule 2.10, Threats in violation of Rule 2.02, and Obstructing an Employee/Visitor in violation of Rule 1.16. (Id., Exhibits 1-2, 4.) As a result, Plaintiff lost three months of earned good time credit and was ordered to pay restitution in the amount of $1,843.81, representing the costs of transportation and medical care for his false claim. (Id.)

On August 25, 2004, Plaintiff pressed the call button inside his cell, summoning medical assistance as he claimed to have fallen and hurt his shoulder. (Id., Exhibit 6, Declaration of David Ballard, ¶ 10.) Plaintiff was taken to the MOCC Medical Unit and then subsequently transported to Charleston Area Medical Center for a shoulder separation. (Document No. 24, p. 3, and Exhibit 6, ¶ 11.) It was determined however, that Plaintiff had thrown his food tray out the bean hole on his

cell door as Correctional Officer I Aharon Davis was retrieving it. (Document No. 24, Exhibit 7.) He then pressed his call button, alleging to have injured his shoulder. (Document No. 24, p. 3.) The correctional officers had to remove him from his cell to transport him to the Medical Unit and then subsequently to CAMC, which required the use of restraints. (Id.) The Defendants contend however, that "this move did not require the use of force, beyond the normal searches and use of mechanical restraints." (Id.) After arriving at the hospital, Plaintiff reported to the hospital staff that he had been subjected to excessive force. (Id.) As a result, Investigator Joseph Coy was assigned to investigate this matter. (Id.) Investigator Joseph Coy reports the results of his investigation as follows:

> That the force alleged by the plaintiff is not permitted by the Division of Corrections and staff are not trained to employ such force.
> That as a Correctional Investigator I have reviewed the records and information relating to this incident and the August 24, 2004 incident and have concluded that inmate Eskridge's claims are not valid.

(Id., Exhibit 5, ¶¶ 11-12.) Following Plaintiff's institutional hearing with respect to the Violation Report on this last incident, he was sanctioned to a 60 day loss of earned good time credit. (Id., Exhibit 7.)

On November 18, 2004, Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff, advising him of his right to file a response to the State Defendants' Motion to Dismiss. (Document No. 25.) Plaintiff filed on December 16, 2004, his response to the Defendants' Motion in which he concedes that he has not exhausted his administrative remedies and requests that the Court dismiss this matter, essentially without prejudice, so that he may exhaust his administrative remedies and then re-file this civil action if necessary. (Document No. 27.)

Having examined the Defendants' Motions and Plaintiff's Response, together with all exhibits, the undersigned has concluded that the Defendants' Motion to Dismiss must be granted.

## THE APPLICABLE STANDARDS

### Rule 12(b)(6) Dismissal

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When considering a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to the Plaintiff, and must take them as true. See Jenkins v. McKeithen, 395 U.S. 411, 421-422, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). "Because a dismissal under Rule 12(b)(6) is accorded *res judicata* effect, such dismissals are generally disfavored by the courts." Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1471 (4th Cir. 1991). When faced with such a Motion, "the magistrate judge should . . . limit [her]self to a consideration of whether plaintiff's allegations, standing alone and taken as true, pleaded jurisdiction and a meritorious cause of action." Id. at 1473. In consideration of the Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept the allegations contained in the Plaintiff's Complaint as true and draw all reasonable inferences in favor of the Plaintiff from them. The Court must determine whether the Plaintiff has asserted a cognizable claim against the Defendants and alleged facts which, if true, would support such a claim.

## DISCUSSION

### A. Eleventh Amendment Immunity.

Suits against a state or state agencies for monetary damages are barred by the Eleventh

6

Amendment to the United States Constitution.[3] See Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). The Eleventh Amendment protects states from being sued in federal court on the basis of state law. See Pennhurst State School & Hosp. V. Halderman, 465 U.S. 89, 117, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); Westinghouse Elec. Corp. v. West Virginia Dept. of Highways, 845 F.2d 468, 470 (4th Cir.), cert. denied, 488 U.S. 855, 109 S.Ct. 143, 102 L.Ed.2d 116 (1988). The Eleventh Amendment immunity not only applies to states and state agencies, but extends to suits filed against state officials when "the relief sought and ordered has an impact directly on the State itself." Pennhurst, 465 U.S. at 117, 104 S.Ct. at 917. See also, Cromer v. Brown, 88 F.3d 1535, 1332 (4th Cir. 1996)("This immunity extends to 'arm[s] of the State,' (citations omitted) including state agencies and state officers acting in their official capacity. (citations omitted)). "Neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dept. of State Police, 491 U.S. at 71, 109 S.Ct. at 2312. A state may however, waive its constitutional immunity in one of two ways:

> (1) directly by statutory or constitutional provision, or (2) "constructively" by voluntarily participating in a federal program when Congress has expressly conditioned state participation in that program on the state's consent to suit in federal court.

Westinghouse, 845 F.2d at 470. Waiver by statutory or constitutional provision must contain "an 'unequivocal' statement of the state's intention to subject itself to suit in federal court." Id. For purposes of civil actions brought pursuant to 42 U.S.C. § 1983 in federal court, "a state's general waiver of sovereign immunity will not suffice to waive the immunity conferred by the eleventh

---

[3] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

7

amendment." Id.; see also, Giancola v. West Virginia Dept. of Public Safety, 830 F.2d 547 (4th Cir. 1987).

The W.Va. DOC, as an agency of the State of West Virginia, is immune from suit under the Eleventh Amendment, unless the State has waived its immunity. Neither means of waiver however, is present here. Accordingly, to the extent Plaintiff is seeking damages from Defendant the West Virginia Division of Corrections, his claims are barred by the Eleventh Amendment and must be dismissed.[4]

### B. Failure to State a Claim / Supervisory Liability.

A claim under 42 U.S.C. § 1983 must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. 42 U.S.C. § 1983. An action for money damages may be brought against state agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under § 1983 must show the violation of a valid constitutional right by a person acting under color of state law. Liability under the doctrine of *respondeat superior* is generally inapplicable to actions arising under 42 U.S.C. § 1983. See Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Instead, liability is personal, based upon each defendant's own constitutional violations." Liability can be premised, however, "on a recognition that

---

[4] The undersigned has recommended that the W.Va. DOC be dismissed from this civil action for having immunity under the Eleventh Amendment and therefore, does not consider Defendants' claim that the W.Va. DOC should also be dismissed as it is not a person within the meaning of 42 U.S.C. § 1983.

supervisory indifference or 'tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984), cert. denied sub nom., Reed v. Slakan, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). A plaintiff must show "a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" Id. at 373. Evidence of a supervisor's continued inaction in the face of documented widespread abuses provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates. Id.

In their Motion, the Defendants contend that Plaintiff has not stated a valid claim under § 1983 against Defendants Governor Bob Wise, Commissioner Jim Rubenstein, or Warden Thomas McBride. (Document No. 24, p. 9.) "In fact, one is left to guess that the theory of the plaintiff against the Governor, the Commissioner and the Warden would be on account of their 'supervisory positions.'" (Id.) The undersigned finds that Plaintiff has failed to specify any act taken by these Defendants that violated his constitutional rights. Although Plaintiff has submitted exhibits evidencing Defendant Jim Rubenstein and Thomas McBride's responses to certain administrative grievances, he has not otherwise addressed them in his Complaint. Furthermore, beyond naming Governor Bob Wise as a Defendant, Plaintiff does not mention him in his Complaint. The undersigned finds that Plaintiff has alleged nothing more than an implied, vague assertion that these Defendants failed to protect his constitutional rights and has failed to demonstrate any element of their personal involvement. Accordingly, Plaintiff has improperly brought this action against Defendants Governor Bob Wise, Commissioner Jim Rubenstein, or Warden Thomas McBride under

the doctrine of *respondeat superior*, has failed to establish supervisory liability and therefore, they must be dismissed as Defendants in this civil action.

>   C.      **Qualified Immunity Defense.**

Courts have established qualified immunity for government officials in consideration of a number of factors including the substantial cost of litigation against government officials, the distraction of government officials from their public responsibilities and the disincentive to responsible and capable persons to accept government positions if there was no protection against suits accusing them of misconduct in the performance of their public duties. State officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996). In Harlow, the Court stated that once a defendant affirmatively pleads the defense of qualified immunity, the trial judge may determine

> not only the currently applicable law, but whether that law was clearly established at the time an action occurred. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful.

Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. In a case in which the defense of qualified immunity is raised, the Court looks to the evidence before it in the light most favorable to the plaintiff when conducting its inquiry of whether the defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. Behrens v. Pelletier, 516 U.S. 299, 309, 116 S. Ct. 834, 840, 133 L.Ed.2d 773 (1996). The District Court must determine first

whether "particular conduct occurred," and second, "whether uncontroverted conduct represented the [violation of a constitutional right]." Elliott v. Leavitt, 99 F.3d 640, 644 (4th Cir. 1996), reh'g en banc denied, 105 F.3d 174, cert. denied, 521 U.S. 1120, 117 S.Ct. 2512, 138 L.Ed.2d 1015 (1997). Only if the Court determines that the plaintiff alleges the violation of a clearly established constitutional right does the Court then proceed to determine whether a reasonable person in the defendants' position should have known that their conduct was illegal. Id.; Leverette v. Bell, 247 F.3d 160, 166 (4th Cir. 2001), cert. denied, 534 U.S. 993, 122 S.Ct. 460, 151 L.Ed.2d 378 (2001)(The Fourth Circuit follows a two-step sequential analysis for determining the validity of a qualified immunity defense: (1) the Court must determine whether the facts viewed in the light most favorable to the Plaintiff establish a deprivation of an actual constitutional right; and, if so, (2) the Court then proceeds to consider whether that right was clearly established at the time of the purported violation.); Pittman v. Nelms, 87 F.3d 116, 199 (4th Cir. 1996); DiMeglio v. Haines, 45 F.3d 790, 795 (4th Cir. 1995).

> The responsibility imposed on public officials to comply with constitutional requirements is commensurate with the legal knowledge of an objectively reasonable official in similar circumstances at the time of the challenged conduct. It is not measured by the collective hindsight of skilled lawyers and learned judges. * * * "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992), *cert. denied*, 506 U.S. 1080, 113 S.Ct. 1048, 122 L.Ed.2d 356 (1993).

Jackson v. Long, 102 F.3d 722, 730-31 (4th Cir. 1996). Finding therefore consistently with Harlow that issues of qualified immunity should be resolved at the earliest possible stage of the litigation, the Fourth Circuit has adopted a "heightened pleading standard." Dunbar Corp. v. Lindsey, 905 F.2d 754, 763 (4th Cir. 1990); see also Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)(noting that qualified immunity is "an *immunity from suit* rather than a mere

11

defense to liability" and "such pretrial matters as discovery are to be avoided if possible[.]" (Emphasis in opinion.)). The "heightened pleading standard" requires specification of the clearly established rights involved and relates to the degree of factual specificity required in the Complaint. Dunbar Corp., 905 F.2d at 763.

The undersigned finds that the facts viewed in the light most favorable to the Plaintiff do not establish a deprivation of an actual constitutional right. Defendants' qualified immunity defense is therefore meritorious, and Plaintiff's claims must be dismissed for this additional reason.

### D. Total Exhaustion of Administrative Remedies.

The Prison Litigation Reform Act [PLRA], 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions under 42 U.S.C. § 1983 "or any other Federal law," though the administrative process may not afford them the relief they might obtain through civil proceedings.[5] See Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 984, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they

---

[5] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

12

allege excessive force or some other wrong.). The PLRA exhaustion requirement applies with equal force to § 1983 and Bivens actions. See Yousef v. Reno, 254 F.3d 1214, 1218 (10th Cir. 2001)(PLRA's exhaustion requirement applies to Bivens claims); Nyhuis v. Reno, 204 F.3d 65, 68-69 (3d Cir. 2000)(§ 1997e(a) applies equally to § 1983 and Bivens actions).

In Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 678 (4th Cir. 2005), the Fourth Circuit held that administrative exhaustion is not a jurisdictional requirement. The Court stated:

> Section 1997e(c)(2) clearly contemplates the dismissal on the merits of some claims that have not been exhausted. Because a district court must have subject-matter jurisdiction before it can dismiss a claim on the merits, failure to exhaust cannot be viewed as affecting the district court's subject-matter jurisdiction over the claim. See *Chellette*, 229 F.3d at 687 ("Because the existence of jurisdiction is a prerequisite to the evaluation and dismissal of a claim on its merits, it follows that jurisdiction is not divested by the failure to exhaust administrative remedies."); *Underwood v. Wilson*, 151 F.3d 292, 295 (5th Cir. 1998)(per curiam)("The statute provides that the court may dismiss such claims without requiring the exhaustion of administrative remedies. The court would not be empowered to do so if the exhaustion provision deprived the court of jurisdiction over the action." (citation omitted)). We therefore conclude that the PLRA's exhaustion-of-remedies requirement does not operate as a bar to the district court's exercise of its subject-matter jurisdiction.

Id. at 678; See also, Perez v. Wisconsin Dept. of Corr., 182 F.3d 532, 536-37 (7th Cir. 1999); Underwood v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998), cert. denied, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999); Wright v. Morris, 111 F.3d 414, 421(6th Cir.), cert. denied, 522 U.S. 906, 118 S.Ct. 263,139 L.Ed.2d 190 (1997); Nyhuis v. Reno, 204 F.3d at 69, n. 4.

The majority of the Circuits, including the Fourth Circuit, have held in the context of inmates' suits under § 1983 that the failure to exhaust administrative remedies is an affirmative

defense under Rule 8(c)[6] of the Federal Rules of Civil Procedure like the defense of statute of limitations. Anderson, 407 F.3d at 681 ("In our view, the language and structure of the PLRA make it clear that an inmate is not required to allege exhaustion of remedies in his § 1983 prison-conditions complaint. Instead, an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise raised by the defendant."); Jackson v. District of Columbia, 254 F.3d 262, 267 (D.C. Cir. 2001); Casanova v. Dubois, 304 F.3d 75, 77, fn. 3 (1st Cir. 2002); Snider v. Melindez, 199 F.3d 108, 111-12 (2d Cir. 1999); Jenkins v. Haubert 179 F.3d 19, (2d Cir. 1999); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002); Wendell v. Asher, 162 F.3d 887, 890 (5th Cir. 1998)(in dicta); Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000); Massey v. Helman, 196 F.3d 727, 734-35 (7th Cir. 2000), cert. denied, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); Perez v. Wisconsin Dept. of Corr., 182 F.3d at 536; Foulk v. Charrier, 262 F.3d 687, 697 (8th Cir. 2001); cf. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir 2000), cert. denied, 531 U.S. 1040, 121 S.Ct. 634, 148 L.Ed.2d 542 (2000)(An inmate must "plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome."). Likewise,

---

[6] Listing certain traditionally recognized defenses, Rule 8(c) of the Federal Rules of Civil Procedure provides as follows:

> **Affirmative Defenses.** In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver and any other matter constituting an avoidance or affirmative defense.

with respect to Bivens actions, the Seventh Circuit Court of Appeals held in Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004), that "[a]lthough exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted). In the context of claims under the PLRA however, *sua sponte* dismissal by the District Court is appropriate when it is apparent from the face of the complaint that the inmate has not exhausted his administrative remedies. Anderson, 407 F.3d at 682.

> In the context of PLRA claims, then, we believe it is appropriate to recognize that district courts have the same authority to inquire into the applicability of an affirmative defense as in the habeas context. Such a conclusion gives some teeth to the PLRA's exhaustion requirement, yet does not do a disservice to the statutory language carefully chosen by Congress.
> Accordingly, we conclude that a district court may raise the issue of exhaustion of remedies on its own motion. Except in the rare case where failure to exhaust is apparent from the face of the complaint, however, a district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue.

Id.

It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal for want of subject matter jurisdiction. See Neal v. Goord, 267 F.3d 116, 121-122 (2d Cir. 2001)(*overruled on other grounds*), a § 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal,

> allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, . . . if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset.

Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court.

Furthermore, available administrative remedies must be exhausted with respect to each claim against each Defendant or the Complaint must be dismissed under the "total exhaustion rule" found in § 1997e(a). See Quinones v. Rubenstein, Civil Action No. 5:02-1365 (S.D. W.Va. Sept. 23, 2003)(C.J. Faber)(Applying a plain meaning reading to the phrase "no action" as stated in § 1997e(a), the District Court concluded that no action shall be brought barring total exhaustion of each and every claim)(*citing* Graves v. Norris, 218 F.3d 884, 885 (8th Cir. 2000); Givens v. City and County of San Francisco, 2002 WL 31478180, *2 (N.D. Cal. Nov. 5, 2002); Saunders v. Goord, 2002 WL 1751341, *3 (S.D. N.Y. Jul. 29, 2002)). In Quinones, Chief Judge Faber adopted the total exhaustion rule as applied to *habeas* actions filed pursuant to 28 U.S.C. § 2254, and applied it to §1983 and other similar actions. (Id., p. 21.) (Id., p. 20.) The Court concluded that the total exhaustion rule "does not detrimentally affect plaintiff's available remedies . . .[r]ather dismissing the present [unexhausted] claims improves judicial economy by encouraging the plaintiff to reshape his complaint to include only cognizable claims." (Id., p. 22.)

Proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted). The West Virginia Division of Corrections' Policy Directive 335.00 establishes procedures whereby state inmates may seek

review of complaints which relate to any aspect of their imprisonment, other than appeals of disciplinary and confinement matters. (Document No. 24, Exhibit 9.) Within 15 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must submit a G-1 Grievance Form to the Unit Manager. (Id., pp. 1-2, ¶¶ 1 and 4.) The Unit Manager must respond to the inmate's Grievance within five business days. (Id., p. 2, ¶ 9.) If the Unit Manager's response was unfavorable, the inmate may appeal within five working days to the Warden/Administrator by filing a G-2 Grievance Form. (Id., p. 3, ¶ 1.) Should the Unit Manager fail to respond within the five day period of time, the inmate may immediately file a G-2 Grievance Form utilizing the G-1 Grievance Form copy. (Id., p. 2, ¶ 10.) The Warden/Administrator must respond to the appeal, in writing, within five working days. (Id., ¶ 3.) If the Warden/Administrator, in his/her discretion, determines that an investigation is warranted, a final response shall be made to the inmate within 30 working days. (Id., ¶ 4.) If the Warden/Administrator's response was unfavorable, the inmate may appeal within five working days to the Commissioner/designee of the Division of Corrections. (Id., pp. 3-4, ¶ 1.) Furthermore, if the Warden/Administrator fails to respond within the five day period of time, the inmate may submit his appeal to the Commissioner/designee within five working days of the lapsed response time. (Id., pp. 3-4, ¶ 1.) The Commissioner must respond to the appeal within ten working days. (Id., p. 4, ¶ 5.) The administrative process is exhausted when the Commissioner responds to the inmate's final appeal. (Id., pp. 4-5.)

In their Motion, the Defendants contend that Plaintiff has not demonstrated that he fully exhausted his administrative remedies prior to filing Complaint. (Document No. 24, pp. 11-13.) In his Response, Plaintiff concedes that he has not exhausted his administrative remedies and requests

17

that the Court dismiss this matter. Accordingly, after reviewing the record, the undersigned finds that it is clear that Plaintiff failed to exhaust fully his administrative remedies prior to filing this civil action and therefore, his Complaint must be dismissed under the Total Exhaustion Rule.

### PROPOSAL AND RECOMMENDATION

The undersigned hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS**, that the District Court **GRANT** the Defendants' Motion to Dismiss (Document No. 23.), **DISMISS** Plaintiff's Complaint without prejudice, and **REMOVE** this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby FILED, and a copy will be submitted to the Honorable Chief United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have thirteen days (ten days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Chief Judge

Faber, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to counsel of record and to Plaintiff, *pro se*.

ENTER: August 30, 2005.

*R. Clarke VanDervort*
R. Clarke VanDervort
United States Magistrate Judge